WILLIAM McGARRAHAN v. J. W. C. MAXWELL et al.

28    75
97   550
28    75
101   304

WHAT AN APPEAL FROM A JUDGMENT INCLUDES.—If, on the rendition of a final
judgment the Court also grants a perpetual injunction, and an appeal is taken
from the whole judgment, the injunction is included in the appeal.

INJUNCTION ON FINAL HEARING.—An injunction granted upon the rendition of final
judgment is a part of the judgment.

DIMINUTION OF RECORD.—If a part of the judgment appealed from is omitted in
the record, the Supreme Court, on being apprised of the omission, will, if it is
material, require it to be supplied, even if the discovery is not made until an
application for rehearing after a decision has been rendered.

EFFECT OF REVERSAL OF JUDGMENT ON INJUNCTION.—A reversal of a judgment
which judgment awards the plaintiff possession of a tract of land, and perpetually
enjoins the defendant from committing waste on the land, also reverses the injunc-
tion decree, even if the decree is not included in the record sent to the appellate
Court.

EFFECT OF AN APPEAL ON A JUDGMENT.—An appeal from a judgment of a United
States Court, affirming a survey of a Mexican grant of land, destroys the value
and effect of the judgment as evidence during the pendency of the appeal.

SURVEY OF MEXICAN GRANT OF LAND.—The Act of Congress, approved June 2,
1862, entitled "an Act for the survey of grants or claims of lands," does not
make a survey, which has been approved by the Surveyor-General, of a Spanish
or Mexican grant of land, prima facie evidence of title.

ACT OF 1862 CONCERNING SURVEY OF MEXICAN GRANTS.—The Act of Congress,
approved June 2, 1862, entitled "an Act for the survey of grants or claims of
lands," did not repeal by implication the Act of 1860, nor did it make any change
in the law regulating the survey of land in California derived from the Spanish
or Mexican Governments, except in requiring the survey to be made on the appli-
cation of the claimant, on his paying the expense of survey.

SURVEY OF MEXICAN GRANT AS EVIDENCE.—A survey of a confirmed Mexican or
Spanish grant of land, which has been approved by the Surveyor-General, with-
out the publication of the notice required by the Act of 1860, is of no effect as
evidence.

CONSTRUCTION OF A LAW.—The meaning of an Act is to be ascertained, not from
the debates which took place on its passage, but from the language of the Act.

APPEAL from the District Court, Third Judicial District,
Monterey County.

This action was brought to recover possession of the tract
of land, lying partly in Fresno and partly in Monterey county,
and in which are located the New Idria quicksilver mines.
The plaintiff claimed title under a grant of the Mexican Gov-
ernment made in 1844 to Vicente Gomez, and to prove the
issues on his part, offered in evidence the petition of Gomez
for the confirmation of his grant to the United States Board

of Land Commissioners, organized under the Act of Congress of March 3, 1851 ; a decree of confirmation of the grant by the United States District Court for the Southern District of California ; a survey of the land confirmed, made by the United States Surveyor-General of California, and approved September 11, 1862 ; and mesne conveyances from Gomez to him.

To the introduction of the decree and the survey in evidence, the defendants, by their attorney, objected, because an appeal had been taken from the decree to the Supreme Court of the United States, and that such appeal suspended the force and effect of the decree so as to render it inadmissible in evidence ; and that the survey was invalid, inasmuch as no publication thereof had been made agreeably to the Act of Congress of June 14, 1860, and that the same had not been confirmed by the Court.   The Court below overruled the objections and admitted the evidence, to which ruling defendants excepted.   Evidence was afterwards offered by defendants, tending to show that an appeal from the decree had been granted to the Supreme Court of the United States.

. Plaintiff recovered judgment in the Court below, and defendants appealed both from an order denying a new trial and from the judgment.

The other facts are stated in the opinion of the Court.

*Hoge & Wilson*, for Appellant.

After an appeal taken, the Court below loses all power over the case, and the whole jurisdiction vests in the appellate Court.   (*Bryan* v. *Berry*, 8 Cal. 134.)

"Where a suit is pending in the Supreme Court on appeal, the judgment below is suspended for all purposes, and it is not evidence upon the questions at issue even between the parties." (*Woodbury* v. *Bowman et al.*, 13 Cal. 635.   See also *Saunders* v. *Whitesides*, 10 Cal. 89 ; *Penhallow* v. *Doane*, 3 Dall. 54, 87, 118 ; *Marshall* v. *Lester*, N. Car. Law Rep., 100.)

But here, as to the effect of the appeal, is another thing of great importance to be considered :

The Surveyor-General can only make a survey *after final confirmation* by the Commissioners, or District Court, or the Supreme Court of the United States. (Brightly's Digest, p. 113, Sec. 46.) Now, after decree by the Land Commission, and pending an appeal to the District Court, no survey could be made, because the decree was not final ; and likewise pending an appeal to the Supreme Court there could be no survey. The Act says, after final confirmation " by the said Commissioners, or by the District Court, or Supreme Court."

The Act of March 3d, 1853, (10 Statutes at Large, 245,) is to same effect. (See Ib. 91 ; Brightly's Digest, Note 113.) This very clear effect follows the appeal, that no survey could be made, and there being no other evidence of boundaries except the map and survey of the Surveyor-General, the action for that reason must fail, and the judgment be reversed.

We then confidently submit that there was an appeal from the decree of confirmation pending, and that two results followed from it, viz :

1st. The decree below was suspended for all purposes, and was not evidence upon the questions at issue, even between the parties. (*Woodbury* v. *Bowman*, 13 Cal. 365 ; *Saunders* v. *Whitesides*, 10 Cal. 89, 90.)

2d. That the appeal operated as a bar to further proceedings on the decree, and the party could not proceed to execute it, or in other words, could not have a survey, which was the only thing to be done in execution of the decree. (*United States* v. *Pacheco*, 20 Howard, 263.)

If these views are correct, the respondent failed to present any evidence of title, and the judgment below must be reversed.

As to the survey—the grant, in this case, confirmed by the decree, was one requiring a survey. There were no definite boundaries. It was not a case of a certain amount within larger exterior boundaries, like that in *Mahoney* v. *Van Winkle*, 21 Cal. 552. No evidence was offered but a survey. It was like the grant spoken of in *Stanford* v. *Tracy*, 18 How. U. S. R. 412-13 : "A public survey was required to attach the

concession to any land." As stated in *Johnson* v. *Van Dyke*, 20 Cal. 228: "The survey was essential to give precision to the title and attach it to any particular law."

The survey offered in evidence was a map and plat by the Surveyor-General of the United States, under the Act of Congress of June 2d, 1862. (See 12 U. S. Stat. at Large, 410.) On making this survey the Surveyor-General made no publication, and took none of the proceedings required of him in the Act of Congress of June 14th, 1860. (See 12 Stat. at Large, 33.)

It was contended by the respondent's counsel that the last named Act was repealed by the Act of June 2d, 1862, and that under this Act surveys were now alone to be made; that the Courts ceased to have any further jurisdiction over surveys, and that the Commissioner of the General Land Office alone could supervise the survey; that the survey under the Act of 1862 was "*prima facie* evidence of the true location of the land claimed or granted," as against the United States, but was conclusive against the defendants in this action.

Going back to the Fossatt case, (21 How. 448,) and before the Acts of 1860 and 1862, relative to surveys, we find the inquiry propounded as to what is involved before the Land Commission, or Court, in reference to land cases. "What are the questions involved in the inquiry into the validity of a claim to land?" After reasoning about the genuineness, power of the office, etc., the Court say: "But in addition to these questions upon the validity of the title, there may be questions of extent, quantity, location, boundary, and legal operation, that are equally essential in determining the validity of the claim." The Court then proceeds to show by direct authority and decisions the power of the Courts over the surveys, citing the Arredondo case, and various others where they directly controlled the survey in the Courts under similar Acts to this one, on the subject of California claims. The cases cited and the statutes referred to were in reference to Florida, and land claims there.

Under this Act of 1851 the Surveyor-General is held to be

directly in the power of the Court, and must fulfil its decrees as to these surveys; and that the same system has existed under the Acts of 1824, 1828, and 1851.

The Fossatt case went twice to the Supreme Court of the United States. It is reported first in 20 How. Rep. 413, and next in 21 Id. 447. It was first reversed and remanded for further proceedings simply on the question of boundaries, the title being held good.

The decree, according to the opinion of the Supreme Court which was entered by Judge Hoffman, left one of the lines to be completed by a survey. From this the United States again appealed, and it was held that the appeal was premature and improvident, and it was dismissed, and the District Court ordered to proceed to ascertain the external lines and to enter a final decree.

Here, then, we may safely draw several corollaries, viz:

1st. The Surveyor-General had not the power of absolutely determining the boundaries and location of grants.

2d. That the District Court might reject the survey and location of the Surveyor-General, and absolutely control the location, and direct what the survey should be.

3d. Where the Court did not direct the location or control the survey, the Commissioner of the General Land Office might refuse the patent on it, and that he might supervise and control the Surveyor-General in these matters.

*What, then, did the act of the Surveyor-General amount to ? What was its effect?* Did it amount to anything at all until it was " *established* " in one of two ways:

1st. By the Court; or,

2d. Adopted by the Commissioner of the General Land Office, and the patent granted ?

Until then, was it not " only a preliminary proceeding amounting in effect to no more than a mere report of the action of the Surveyor?" Did it bind anybody ?

But, last of all, comes the Act of 1862, June 2d, and with it, as claimed by respondent's counsel, a most radical change. They claim that it took away that part of the jurisdiction of

the Courts which was exercised over surveys under the Act of 1851, and entirely repealed the Act of 1860. The Surveyor-General who, under the Act of 1860, could only in the first instance make "a preliminary proceeding, amounting in effect to no more than a mere report," as is said in *Mahoney* v. *Van Winkle*, suddenly became absolute and filled with a most dangerous power.

If the Commissioner of the General Land Office still has supervision, it must be to a very limited extent; such as pronouncing in the face of the proceedings, or, as said in *Castro* v. *Hendricks*, "to see that the survey is in accordance with the decree." How few such cases would occur? Most errors can be shown only by matters *dehors* the survey and plat. But the Commissioner's power to revise the action and survey of the Surveyor-General arose from Acts of Congress, and the Court's power of revision arose from Acts of Congress.

How then does the Act of 1862 take away by implication the power of the Court to revise the survey, but leave the power of the Commissioner remain to revise the survey ?

The Act of June, 1862, only contemplates the action of the Surveyor-General on application by the claimant, and on his paying or securing the expense. Unless that application is made, or that payment is made or secured, the Surveyor-General cannot act.

"The exercise of the right of measurement and segregation was not only a duty to the grantee—it was necessary to enable the Government to ascertain the extent of property it had acquired by the cession of the country, to separate the public lands from those that are private." (*Estrada* v. *Murphy*, 19 Cal. 270. See also the *Fossatt Case*, and *Castro* v. *Hendricks*.) From this it becomes clear, as well as from the repugnance of a Court to declare a repeal by implication, that the Act of 1860 is not repealed, but is in full force and effect. The Act of 1860, as well as the Act of June, 1862, are both in force.

*John W. Dwinelle, Hoge & Wilson*, and *Edmond L. Goold*, also for Appellant.

The reversal of the judgment will carry with it the reversal of this judgment of injunction.   Injunctions are of two kinds: one, temporary or provisional, granted pending the litigation, and ancillary to it, until the decision of the main issue; the other, final, incorporated into the judgment, and forming a part of the relief demanded in the complaint.   A provisional or temporary injunction expires with the entry of judgment; a final injunction is based upon the other parts of the judgment, that is to say, upon the facts judicially determined by the judgment.   In this case the final judgment of injunction rests wholly upon the *res judicata* that the lands in controversy belong to the plaintiff.   But the granting of a new trial overturns this *res judicata*, and reverses the judgment with all its incidents, and as a part of that judgment the injunction incorporated in it falls to the ground.

*Patterson, Wallace & Stow*, and *Sharp & Lloyd*, and *T. J. Bergen*, for Respondent.

The decree of confirmation and the survey are conclusive, and appellants are not in condition to question them in this action.   It is submitted, the uniform decisions of this Court place this proposition beyond cavil or dispute.   (*Clark* v. *Lockwood*, 21 Cal. 222; *Estrada* v. *Murphy*, 19 Cal. 273; *Waterman* v. *Smith*, 13 Cal. 419.)

If there was an appeal, it did not suspend the operation and effect of the decree.   The claimant to maintain his rights is compelled, involuntarily, to sue the United States.

The law regulating the proceeding is the will of the United States, and the officers administering the law are the officers of the United States.   The right of an humble claimant is the subject matter of the controversy against his great adversary, the sovereignty.   He has no protection, no shield, except that of the Constitution and the treaties, the supreme law of the land. The Government engages in the contest as any other litigant. The United States has wisely and justly foreborne to make any distinction; the United States must contend according to the

existing laws and rules of the Courts, or not at all. If aggrieved by the decree of the lower Court, and an appeal is sought so as to operate as a supersedeas, to obtain it the United States must conform to the law.

Here it is not claimed that there was any citation or bond on appeal, although expressly required by the Act of March 3d, 1857, and the general laws of 1803 and 1789. There is no law dispensing with the citation.

At the time of the alleged granting of the appeal, (25th August, 1862,) there was no law dispensing with the necessity of a bond on the part of the United States. The only law on the subject was passed 23d February, 1863, long after the alleged appeal. It will be found in supplement to Brightly's Digest, 1,182. This dispenses with the bond on the part of the Government, but still provides that the Government shall be liable for and shall pay any costs that may be awarded against it. The necessity for the enactment of this law clearly demonstrates that before its passage the United States were bound to give the bond on appeal. (*Adams et al.* v. *Law*, 6 How. 148 ; *Wallen* v. *Williams*, 7 Cranch. 278 ; *Carr* v. *Hoxie*, 13 Peters, 462.)

An appeal in equity does not operate as a supersedeas unless the appeal be taken and a good and sufficient bond be given within ten days after the *pronouncement of the decree*. (*Stafford* v. *The Union Bank, La.*, 16 How. 135.) Appeal of itself is no supersedeas. (*Carr* v. *Hoxie*, 13 Pet. 460 ; *U. S.* v. *Curry*, 6 How. 113 ; *Riggs* v. *Murry*, 3 Johns. Ch. 160, and cases cited ; *Pell* v. *Ball*, 1 Richardson, 366 ; *Robertson* v. *Robertson*, 7 Edw. Ch. 360 ; 2 Bac. Abr., Error, (H) 479 ; *Enthwhistle* v. *Shepherd*, 2 T. R. 78 ; *Rose* v. *Bennett*, H. Blackstone, 432 ; *Miller* v. *Cousins*, 4. Bos. & P. 307.)

Suppose the appeal had been perfectly regular, and taken within ten days from the *pronouncement* of the decree ; then it would not operate as a supersedeas. (*Gregory* v. *McPherson*, 13 Cal. 574.)

The grant gave the claimant the right of possession, and required it. (*Thornton* v. *Mahoney*, 24 Cal. 569, and cases

there cited, and also cases hereinbefore referred to.)   The decree did not take away that right, nor is there anything in the Act of March 3d, 1851, or in any of the Acts of Congress, taking it away or in any way interfering with that right.

*The survey is valid and conclusive in this action, and cannot be questioned by appellants.*   The survey having been regularly made by the duly authorized officers of the law, agreeably to the Act of June, 1862, (12 U. S. Stat. at Large, 410,) the question arises whether in this action it is conclusive ?   The Act last mentioned is clear in its terms, and the operation and effect thereof must be determined thereby.   In the construction of statutes, it is well settled that resort cannot properly be had to nor can the construction thereof be influenced by the discussion thereon in the passage thereof in the legislative body.   Resort cannot be had to the debates in Congress thereon. This is familiar and well settled law.   (*Forrest* v. *Forrest,* 10 Barb. S. C. R. 48 ; *Aldridge* v. *Williams,* 3 How. 24 ; *Barbat* v. *Allen,* 10 Eng. Law and Eq. 601.)

Discarding, therefore, all aid from the uncertain light of legislative discussion, it is submitted that according to the plain language and manifest import of the Act, upon proper construction thereof, the survey thereunder is valid and conclusive.   The words, " nothing in the law requiring the executive officers to survey land claimed or granted under any laws of the United States," do not operate as a limitation to exclude surveys made thereunder from the effect thereof.   All lands in the United States derived from any foreign country or Government, or claimed or granted under any laws of the United States, must, where survey thereof is at all necessary, be surveyed by the officers who are by law required to survey lands claimed or granted under any laws of the United States.   They are the proper officers to make admeasurement thereof whenever requisite.   Private land claims are surveyed under the law requiring the executive officers to survey lands claimed or granted under any laws of the United States, though in particular classes of cases special provision in relation thereto is made in addition to the general law.   " Nothing in the law

requiring the executive officers to survey land claimed or granted, under any laws of the United States, shall be construed * * * to give any greater effect to the surveys made by them, than to make such surveys *prima facie* evidence of the true location of the land claimed or granted." The *surveys* made by them clearly embrace surveys under the Act. The surveys made by them shall be *prima facie* evidence of the true location—what of? Not land claimed or granted exclusively under any law of the United States, but land claimed or granted without restriction or qualification from whatever source derived. The connection, too, in which the words occur make this plain. They are in opposition to what had been declared in the preceding part of the Act to qualify the extent and operation of the same, and are introduced by the opposite word "but." Nor does the Act or any law require publication of notice of survey made thereunder. The law requiring such publication will be found in section one of the Act of June 14th, 1860, (12 U. S. Stat. at Large, 3.) This Act is repealed by the Act of 1862.

By the Court, RHODES, J.

The complaint in this case, in addition to a cause of action in ejectment, states facts entitling the plaintiff to a provisional injunction pending the action, and a perpetual injunction to restrain the defendants from the commission of waste on the premises in controversy. The judgment in ejectment was rendered August 10, 1863, and on the same day a decree of injunction, perpetually restraining the defendants from committing waste was signed and filed in the Clerk's office, and on the following day it was entered in the judgment book. It does not appear that a provisional injunction was ordered. In the notice of appeal, it is stated that the defendant's appeal "from the judgment therein made and entered in said District Court, on or about the 10th day of August, A. D. 1863, in favor of said plaintiff against said defendants, and from the whole thereof, and from the order of the Court refusing a

new trial," etc.    The record filed in this Court did not contain
a copy of the decree of injunction.    Upon the former hearing
of the appeal, the judgment of the Court below was reversed
and the cause remanded, and subsequently a rehearing was
granted, upon the petitions of both parties, the plaintiff seek-
ing an affirmance of the judgment of the Court below for the
recovery of the possession of the premises; and the defend-
ants desiring that a diminution of the record should be
adjudged, and that the decree of injunction be ordered to be
certified to this Court, in order that it might be reversed,
together with the judgment for the recovery of the possession
of the premises.

The first question is, what constitutes the *whole* of the judg-
ment in the cause, from which the appeal is taken.    A judg-
ment, as defined in the Practice Act (Sec. 144), is a "final
determination of the rights of the parties in the action or pro-
ceeding."    No particular form for the judgment is prescribed
in the Act, but it will be rendered by the Court in such mode
that it will conform to the cause of action stated, and the
proof adduced on the trial.    The Court will grant the relief
to which either party appears, from his allegations and proofs,
to be entitled, and the relief adjudged by the Court, if it
finally determines the rights of the parties respecting the
matters alleged by them in their pleadings, constitutes the
judgment.    And it is immaterial whether the Court grants
relief to each of the parties, or to one party only, or whether
the relief is in its character legal or equitable, or both, for
the decision of the Court, if it amounts to a final determina-
tion of the rights of the parties, touching the matters in contro-
versy, is a judgment.    The term "decree," although not found
in the section of the Practice Act referred to, is frequently
used by the Legislature and the Courts of the State, and is
employed to distinguish a sentence or judgment of the Court
in a suit in equity, or in respect to the equitable branch of an
action or proceeding at law, from a judgment in an action or
the branch of the action determined upon legal, as contra-
distinguished from equitable principles—the term being em-

ployed not as a designation of something different from a judgment, but rather a judgment of a particular character. In the same manner, we use the terms "*fieri facias,*" "order of sale," and "writ of restitution," not as indicating writs differing from an execution, but as descriptive of certain kinds of writs, all of which are included in the generic term "execution"—the writ issued for the enforcement of a judgment. Nor is it of any consequence whether the judgment consists of only one or of more than one entry. In ejectment, the plaintiff may be entittled to judgment for a part of the premises, and the defendant, who has stated an equitable defense, may be entitled to a judgment granting equitable relief for another part of the premises, but both determinations, taken together, constitute a judgment. A cause of action to restrain the commission of waste may, under our system of practice, be united with a cause of action in ejectment for the recovery of the possession of the premises threatened to be injured, and the two causes of action, together with the facts pleaded by the defendant, constitute the matters in controversy between the parties, and the final determination of the rights of the parties respecting those matters, whatever form it may assume, is the judgment. The judgment in ejectment and the "decree" of injunction, in this case, constitute one judgment, and the defendants having appealed from the whole judgment, the "decree" is necessarily included in the appeal.

The decree was not brought up to this Court in the record filed by the defendants, and on which the appeal was first heard, and it is now insisted by the plaintiff, that as the defendants were bound to take notice of the entry of the decree, and did, in fact, know that it was entered, they are not entitled to have it brought up for review at this stage of the case because they have not used due diligence in suggesting a diminution of the record, and procuring a certiorari to have the decree returned to this Court. If the question related to an order intermediate the judgment, a bill of exceptions or a statement, or any matter that the appellant might, at his election, have presented to the appellate Court, in con-

nection with his appeal from the judgment, the propriety of permitting the omitted matter to be incorporated into the record, after the appeal had once been passed on by the Court, would be very questionable; but in respect to the judgment or order appealed from, the question as to permitting an amendment incorporating it into the record if omitted therefrom in whole or in part, cannot be solved upon consideration of diligence.

The judgment, or the part of it appealed from, must of necessity be brought before the appellate Court, either in *hæc verba*, or by a statement of its. substance, for it is the very foundation of the whole proceeding in the appellate Court, and its presence is as requisite to enable the Court to act in the cause, as is the complaint or answer when a Court of original jurisdiction passes upon a general demurrer to the whole pleading. Not only would it be the right of either party to have the omitted judgment or part of the judgment brought before the appellate Court, but the Court, on being apprised of the omission, may and would require it to be supplied, if it was deemed material and necessary to a proper decision of the appeal. In the absence from the record of the judgment appealed from, the matters in controversy between the parties on appeal are not before the appellate Court.

The question is not worthy, we think, of the laborious consideration bestowed upon it by counsel. The cause of action to restrain the commission of waste consists of the allegations that the plaintiff has title to the premises, that the defendants are in possession without title and threaten to commit the alleged waste, and are unable to respond in damages for the injury. The plaintiff's right to the equitable relief is dependent upon his title to the premises. The Court, having found that the title to the premises was in the plaintiff, and that the defendants were wrongfully in possession; and having found, as we may presume, the other facts which were necessary to entitle the plaintiff to the equitable relief prayed for, the Court was thereupon authorized to grant the injunction. The basis of the equitable relief was the title of the plaintiff to the lands

in controversy, and if the Court had not adjudged that the title to the premises was in the plaintiff, the injunction could not have been ordered; and it inevitably follows, that if the cause is appealed and the decision of the Court below respecting the title is reversed, the injunction, like all other proceedings dependent upon that decision, must fall with it.

Counsel have again argued the two principal questions in the case—first, as to whether an appeal was taken by the United States to the Supreme Court of the United States, from the decree of confirmation rendered by the United States District Court for the Southern District of California, in the case of *Gomez* v. *The United States;* and second—as to the value and effect as evidence, of the survey of the rancho Panoche Grande, made by the United States Surveyor-General. The plaintiff's evidence relating to these questions consisted of the petition of Vicente Gomez, the alleged grantee of the Mexican Government, to the Board of Land Commissioners, for a confirmation of his claim to the rancho; a formal decree of the United States District Court for the Southern District of California, confirming the claim of Gomez to the rancho, signed on the 5th day of February, 1858, and ordered to be entered *nunc pro tunc*, as of the 5th day of June, 1857, the date at which the decree was pronounced; also a certified copy of the official survey and map of the rancho, approved the 11th day of September, 1862, by E. F. Beale, United States Surveyor-General for California, together with the application of the plaintiff to the Surveyor-General for a survey, and the instructions of the Surveyor-General to his deputy concerning the survey. The plaintiff deraigned title from Gomez, and the defendants stipulated that they were in possession. The defendants introduced in evidence an application by the United States District Attorney, to set aside the decree of confirmation; the order of the Court made thereupon March 21st, 1861, setting aside the proceedings in said cause, and ordering the cause on the calendar for trial *de novo;* and the order of said Court, made August 25th, 1862, allowing an appeal to the Supreme Court of the United States, from the

decree of confirmation; also an order of said Court, made December 4th, 1862, setting aside the last mentioned order; also an order made August 4th, 1862, vacating the order directing the cause to be placed on the calendar for trial *de novo.*

First—Was an appeal taken to the Supreme Court of the United States from the decree of confirmation of the United States District Court? The plaintiff holds that there was no appeal taken, for the reason that more than five years had elapsed from the time when the decree was entered before the appeal was allowed, and that no citation was issued and served on the appellee. In our former opinion, the decision of the Supreme Court of the United States, rendered at the December term, 1863, in the case of *The United States* v. *Vicente P. Gomez,* was relied on as a complete and conclusive solution of this question. The Court in that case held that the final decree of the District Court was entered on the 5th of February, 1858—the date of the signing of the decree that was ordered to be entered *nunc pro tunc*—and not on the 5th of June, 1857, the date of the entry in the Clerk's minutes of the order that a decree be entered up in conformity to the opinion of the Court—and consequently that the five years had not run before the allowance of the appeal. And the Court further held that a citation was not necessary, and in delivering the opinion they said: "Appeal, it is true, purports to be from the decision and decree of the Court confirming the claim, but it was taken from that decree not only after it had been vacated, but after the decree directing it to be vacated had itself been stricken out and the original decree restored. Admitting that the order restoring the original decree was one of any validity, then indeed no citation was necessary, because the appeal was taken in open Court and might well be regarded as taken at the same term the decree was entered. The Court also held citation in the case to be unnecessary, for other reasons based on facts that do not appear in the record in this Court.

But the plaintiff's counsel say that the record of the cause

in the Supreme Court of the United States was not in evidence in this cause, in the Court below ; that the decision was not rendered until after the trial of this cause, and that therefore it is improper to assume that the cause in the Supreme Court on appeal was the same cause that was determined by the United States District Court, portions of the record of which were introduced in evidence in this cause; and that the decision of the Supreme Court is devoid of all effect in this cause, except in so far as it may be regarded as authority upon questions of law involved in this cause ; and counsel have cited many cases to show that the decision of the Supreme Court cannot be maintained as sound authority, either in respect to the event from which the time for taking the appeal begins to run, or the necessity of a citation.

It is not pretended by the defendants' counsel that the record in the Supreme Court of the United States was in evidence in this cause, and it is not denied by the plaintiff's counsel that that Court rendered the decision cited by the defendants' counsel in a cause entitled the "United States, appellants, vs. Vicente P. Gomez, appellee," which was an appeal from the decree of the District Court of the United States for the Southern District of California, confirming the claim of Gomez, the petitioner, to the Rancho Panoche Grande. The identity of the names of the parties, of the land claimed by the petitioner, of the decree of confirmation of the District Court, and of the orders made by the Court in the cause, sufficiently show the identity of the action with that, the record of which was introduced in evidence in this cause.

Although the record in the Supreme Court of the United States was not offered in evidence and is not before us, yet the record in this Court contains the facts on which the decision on the points under consideration was based—at least if not the same facts, those that in all material respects are identical in substance—and we would be well justified in giving the same construction to those facts and matters of record, and drawing the same inferences and conclusions therefrom, as was done by the Supreme Court of the United States. The position of the

plaintiff's counsel that the decision is not evidence in this case, is unquestionably true, but it has its value as an authority, emanating from the highest Court in the country, upon the precise points in question, founded on facts identical in substance, if not in every particular, with those before us.

But counsel attack the decision as not being in harmony with many earlier decisions of the same Court, and those of other Courts entitled to great consideration and weight. It is scarcely necessary to examine the cases cited, to ascertain whether they harmonize with the decision or are opposed to it, for confessedly that Court has authority to inquire into and determine all matters pertaining to its own jurisdictions of causes before it on appeal from inferior Courts of the United States, and when the question is, did that Court acquire jurisdiction of a certain cause upon a given state of facts, we are justified in following the decision, when the same question is presented to this Court, on the same state of facts.

The effect of the appeal was to suspend all proceedings in the Court below, and preclude the doing of any act for the purpose of carrying the decree into effect, it remaining inoperative for any purpose until the appeal was disposed of. The operation and effect of an appeal from the decree of the United States District Court, approving the survey of a confirmed grant, was considered by us in *Thornton* v. *Mahoney*, 24 Cal. 569, and we held that "the appeal having been perfected, all further proceedings upon the survey and the decree approving it became suspended," and that "while the appeal remained pending it was a bar to further proceedings in the Court below." The appeal in this case, as in that, operated as a supersedeas, neither an order to that effect nor an appeal bond being required. (See, also, *United States* v. *Pacheco*, 20 How. 263 ; *Woodbury* v. *Bowman*, 13 Cal. 634 ; *Saunders* v. *Whitesides*, 10 Cal. 89 ; *Helm* v. *Boone*, 6 J. J. Marsh, 353.)

Second—The survey of the rancho is claimed by the plaintiff to have been rightfully made under the Act of Congress of June 2d, 1862. (12 U. S. Statutes at Large, 410.) The Judge of the Court below held that the survey was made under that

Act; and while he considered it unnecessary to decide the point made by the plaintiff that the Act of 1862 divested the Courts of the United States of the jurisdiction to approve the surveys of private land claims conferred upon them by the Act of June 14th, 1860, (12 U. S. Statutes at Large, 33,) he held that the Act of 1862 constituted a survey of a private land claim, made and approved by the Surveyor-General, under that Act, *prima facie* evidence of the true location of the land confirmed, and that " the title of the confirmee adheres to that location and becomes perfect until the survey is set aside by proper authority and ejectment can be maintained on it in the State Courts."

We think the learned Judge was in error in his construction of the Act of 1862. The first part of the section—the Act consisting of one section—is as follows : " *Be it enacted,*" etc., " that all claims or grants of land in any of the States or Territories of the United States, derived from any foreign country or government, shall be surveyed under the direction of the proper officers of the Government of the United States upon the application of the parties claiming or owning the same, and at their expense, which shall be paid or secured to the satisfaction of the Secretary of the Interior, before the work shall be performed." And that is the only part of the Act that has relation to a claim to land, or a grant of land, derived from the Spanish or Mexican Governments. The remainder of the Act relates to " land claimed or granted under any laws of the United States," and its purpose seems to be to define and limit the operation of the laws regulating the survey of such lands. It is declared that " nothing in the law requiring the executive officers to survey land claimed or granted under any laws of the United States, shall be construed either to authorize such officers to pass upon the validity of the title granted by or under such laws, or to give any greater effect to the surveys made by them, than to make such surveys *prima facie* evidence of the true location of the land claimed or granted." The law, of which construction is given by the Act, is the law providing for surveys of lands, the title to

which is derived under the laws of the United States; and the survey, the effect of which is declared, is obviously the survey of lands claimed or granted under the same laws. The limitation of the authority of the officers making the survey, and of the value and effect of the survey when made, bears upon the same class of lands. It would not be reasonable, unless the construction was imperative, to say that Congress intended to prohibit the executive officers from passing upon questions of title to lands in California, claimed by virtue of a right or title derived from the Spanish or Mexican Government, when the laws then in force expressly conferred jurisdiction of those questions upon the Courts of the United States; nor would it be reasonable to say that Congress intended by the Act to declare that the surveys of " private land claims in the State of California " shall not amount to more than *prima facie* evidence of the true location of the land claimed, when under the Act of 1860, providing for the survey of those claims after their confirmation, the survey approved by the Surveyor-General is of no value as evidence, until certain proceedings are had, in the mode prescribed by that Act, and after those proceedings are had, and the survey stands or becomes confirmed in the manner provided in the Act, it is *conclusive* evidence of the true location of the lands granted. The last clause of the Act of 1862, providing that such grant shall not " be deemed incomplete for the want of a survey or patent, when the land granted may be ascertained without a survey or patent," can have no reference to a Spanish grant in California, for its completeness or incompleteness cannot possibly depend upon the fact that a survey or patent has or has not been made or issued by the United States.

The Act of 1862 did not repeal by implication the Act of 1860, and it made a change in the law regulating the survey of land in California claimed under title derived from the Spanish or Mexican Governments, only in this respect: the survey of the claim or grant was directed to be made upon the application of the claimant, and on his paying or securing the payment of the expense of the survey. Under the thir-

teenth section of the Act of 1851, to ascertain and settle private land claims in the State of California, it was the duty of the Surveyor-General to survey all private claims upon their being finally confirmed, and no application by the claimant · was required, and by other Acts it was provided that the expenses of the surveys should be paid by the United States.

It cannot be said that the Act of 1860 repealed any part of the laws pertaining to the survey of private land claims in California, except in the respects just mentioned; for the Act provides neither in what manner, nor by what officers, the survey shall be made, or approved, or confirmed, nor what disposition shall be made of it when either or all of these proceedings are had; and as resort must be had to the laws then in force to ascertain the mode of procedure, and the authorities that are charged with the performance of duties in that respect, those laws must remain in force except in so far as they are inconsistent with the Act of 1860. Entertaining these views of the construction of the Act, we are warranted in holding, until a different construction is given by the Federal Courts, that the survey of the rancho, in pursuance of, and to carry into effect the decree of confirmation, was required to be made in accordance with the laws in force at the passage of that Act, except that the claimant was required—as was done by the plaintiff in this case—to make his application for, and pay or secure the payment of the expenses of, the survey; and we are of the opinion that the Surveyor-General, not having given notice by publication, that the survey and plat had been made and approved by him, as required by the Act of 1860, the survey and plat was entitled to no effect as evidence in this case. In arriving at this conclusion it is conceded, for the purposes of the argument, that the decree of confirmation of the United States District Court was in full force, and that no appeal therefrom had been taken; for if the appeal had been taken, no proceedings to carry the decree into effect, by means of a survey, or in any other manner, could lawfully have been had.

We have not felt warranted in resorting to the reports or

debates in Congress, upon the passage of the Act of 1862, to ascertain its true meaning and construction, and we adopt the language of Mr. Chief Justice Taney, in *Aldridge* v. *Williams*, 3 How. 24, as clearly expressing the law in this respect. He says: "In expounding this law, the judgment of the Court cannot, in any degree, be influenced by the construction placed upon it by individual members of Congress in the debate which took place on its passage, nor by the motives or reasons assigned by them for supporting or opposing amendments that were offered. The law, as it passed, is the will of the majority of both houses, and the only mode in which that will is spoken is in the Act itself, and we must gather their intention from the language there used, comparing it, when any ambiguity exists, with the laws upon the same subject, and looking, if necessary, to the public history of the time in which it was passed." (*Leese* v. *Clark*, 20 Cal. 425; *Forrest* v. *Forrest*, 10 Barb. 46.) The language of the Act is sufficiently plain and unambiguous to indicate the intention of Congress, and upon reading it by the aid of the ordinary rules for the construction of sentences, it is apparent that the Act speaks of two different classes of lands and makes different provisions respecting each class, as we have indicated.

The plaintiff's counsel contend that under the provision of the Act of 1862, directing that " all claims or grants of land, etc., derived from any foreign country or government shall be surveyed, etc., upon the application of the parties claiming or owning the same," they were entitled to have the rancho surveyed; that such survey, when made by the duly authorized officers of the law, constituted an identification of the land granted, and the survey *ex necessitate rei*, upon general principles, became conclusive, unless otherwise expressly provided by law. It is unnecessary to express any opinion as to the conclusiveness or effect of a survey of a claim or grant of land in California, that has not been confirmed, and the Act itself is silent in that respect. The provision is that the *claim or grant of land* may be surveyed. In the Act of Congress of 1851, to ascertain and settle private land claims in the State

of California, the word *claim* is used as comprehending every species of right, title or interest, legal or equitable, in or to lands derived from the Spanish or Mexican Government. The words *claim* and *grant* are not entirely synonymous, but a *claim* will include a *grant*, and also a right or interest that did not pass by grant, but is based upon some equity possessed by the claimant, entitling him to have his right perfected by the Government, by a conveyance of the legal title. A mere naked assertion of right or title does not constitute a *claim* within the meaning of the Acts to ascertain and settle private land claims, or of the Act of 1862; and we do not understand that the plaintiff relies upon anything else than his title, as constituting his claim to the land. The grant to Gomez, referred to in his petition for the confirmation of his claim, is the only claim derived from a foreign Government that appears in this case, even admitting that the recitals in the proceedings for confirmation are evidence in this cause of the existence of the grant—the grant itself not being in evidence. The only claim or grant of land that the plaintiff was authorized to have surveyed, under the Act of 1862, conceding that that Act is comprehensive enough to require a survey prior to the final confirmation of a claim that is in process of confirmation, and is required by law to be surveyed after confirmation, was the grant to Gomez, described in his petition to the Board of Commissioners for the confirmation of his claim. The decree of confirmation, conceding it to have been final, could no more form a constituent part of his *claim* derived from the Mexican Government, than would a patent issued by the executive officers of the United States. The plaintiff applied to the Surveyor-General for the survey of the rancho according to the decree of confirmation entered by the United States District Court, and the Surveyor-General instructed his deputy to survey the rancho according to that decree, and he approved the survey, as made in accordance with the decree. In the petition the land is described as a "certain tract of land called Panoche Grande, of the extent of four square leagues, (now lying and being in the County of San Joaquin,) bounded as

follows: On the south by the lands of Francisco Aryas, on the north by the lands of Julian Urzua and the low hills, and to the east by the barren hills, as explained by the maps hereto annexed." And in the decree the land is described as " the tract of land situate in the County of Fresno, State of California, known by the name of Panoche Grande, bounded northerly by the lands of one Julian Ursua, southerly by the hills, easterly by the Valley of the Tulare, and westerly by the lands of Don Francisco Aryas, containing four square leagues of land and no more; * * * and for a more particular description of which said land, reference is hereby made to the maps and surveys in the transcript in this case." It is apparent that the two descriptions are essentially different. The survey was not applied for, nor made, nor approved as the survey of the plaintiff's claim or grant of land, but as the survey of land as finally confirmed by the decree of confirmation; and hence it was not admissible in evidence as an official survey of the plaintiff's claim or grant of land.

Judgment reversed and the cause remanded for a new trial.

SAWYER, J., concurring.

I concur in the judgment.

Mr. Justice SHAFTER expressed no opinion.